UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE R. CHEATHAM,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL A. ASTRUE,<br>Commissioner of Social Security<br><br>　　　　　Defendant. | No. CV 09-3917 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Nicole R. Cheatham ("Cheatham") filed a Complaint on June 2, 2009. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on July 14 and 16, 2009. (Dkt. Nos. 6-7.) The parties filed a Joint Stipulation ("JS") on February 11, 2010, that addressed the disputed issues. The commissioner filed the certified administrative record ("AR"). The Court has taken the Joint Stipulation under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

# I.
# **PROCEDURAL BACKGROUND**

On July 14, 2006, Cheatham filed an application for disability insurance benefits alleging an onset date of September 13, 2005. AR 11. The application was denied initially and on reconsideration. AR 18-19. Cheatham requested a hearing. AR 31. On June 9, 2008, an Administrative Law Judge ("ALJ") conducted a hearing at which Cheatham testified. AR 374-394. On July 7, 2008, the ALJ issued a decision denying benefits. AR 8-17. On April 21, 2009, the Appeals Council denied the request for review. AR 4-7. This lawsuit followed.

# II.
# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

## III.

## EVALUATION OF DISABILITY

### A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Cheatham met the insured status requirements through December 31, 2010. AR 13. Cheatham has the following medically determinable severe impairment: "myofascial disorder." *Id.* Cheatham has the residual functional capacity ("RFC") "to perform the full range of light work." *Id.* The ALJ found that Cheatham is able to perform her past relevant work as a project editor as actually and generally performed. AR 17.

### C. Mental Impairment

Cheatham argues "it is clear that the ALJ accepted the presence of a mental impairment consisting of a somatization disorder." JS 4. Cheatham asserts that the ALJ erred in not using the psychiatric review technique. 20 C.F.R. § 404.1520a(b).

The ALJ "agree[d] fully with Dr. Soltz in his report at Exhibit 4F that there is no severe or functionally limiting mental impairment. The State Agency Board certified psychiatric consultants also came to the same conclusion." AR 13.

An ALJ's written decision must "incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the

functional areas described in paragraph (c) of this section." AR 13; 20 C.F.R. § 404.1520a(e)(2).

The ALJ specifically found "none of the B criteria credibly established as existing for any reason." AR 13. The "B criteria" are restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace, and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). A five-point scale is used to rate the first three functional areas: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). A four-point scale is used to rate the degree of limitation in the fourth functional area: "None, one or two, three, four or more." *Id.*

The ALJ's decision described the significant history, including examination and laboratory findings, and the functional limitations that were considered. The ALJ summarized Dr. Kent's report dated January 17, 2006, which reviewed prior reports, and Dr. Soltz's report dated September 8, 2006, which also reviewed prior reports. AR 15-16. The ALJ also relied on the state agency psychiatrists, who found no severe mental impairment. AR 13, 16, 183.

Cheatham argues the ALJ did not articulate specific and legitimate reasons for rejecting the December 2004 opinion of primary treating physician Dr. Hirsch regarding Cheatham's ability to work. JS 5-6. Dr. Hirsch, who is described as an "internal medicine specialist" (AR 104), diagnosed fibromyalgia and irritable bowel syndrome, and returned Cheatham to modified work per his permanent and stationary report in December 2004. AR 97-99. Dr. Hirsch's permanent and stationary report is not in the record. There is no indication that it attributed work restrictions to any mental impairment. *See* AR 108-09 (Dr. Kent's description of Dr. Hirsch's diagnosis and recommendations); AR 167 (Dr. Soltz's description of Dr. Hirsch's December 10, 2004 permanent and stationary report); AR 343 (Dr. Halote's description of same report). In reviewing one psychological report, Dr. Hirsch stated that opinions in psychology "are

4

outside the purview of this examiner" and deferred to the appropriate specialists.[1]  AR 225.[2]

Accordingly, the ALJ did not err in not mentioning Dr. Hirsch's December 2004 report in the context of the psychiatric review technique.

To the extent Cheatham's argument is construed to mean that the ALJ erred in failing to consider Dr. Hirsch's opinion in the context of her physical impairments, the contention is not well taken.  The ALJ stated he relied on Dr. Kent as a "distinguished neurologist" who examined Cheatham three times over a 10-year period.  AR 13, 15-16, 103-04.  As the ALJ noted, Dr. Kent found no objective evidence of fibromyalgia.  Cheatham did not have 11 or more positive fibromyalgia tender points.  The tender points she did have were all above the waist, "which is in direct conflict with the

---

[1] On February 6, 2007, Dr. Hirsch issued a report in which he reviewed the psychological reports and adopted Dr. Halote's findings as his own.  AR 222.  Dr. Hirsch did not, however, independently diagnose a mental impairment or functional limitations associated with such an impairment.  AR 217, 279-81, 286.  Cheatham submitted Dr. Halote's report to the Appeals Council.  AR 312, 324, 337, 339, 340, 364.  Dr. Halote assessed "minimal" impairment in Cheatham's ability to comprehend and follow instructions; "very slight" impairment in her ability to perform simple and repetitive tasks; "slight" impairment in her ability to perform complex or varied tasks, relate to other people beyond giving and receiving instructions, and make evaluations or decision without immediate supervision; and "slight to moderate" impairment in her ability to maintain a work pace appropriate to a given work load, to influence people, and accept or carry out responsibility for direction, control and planning.  AR 360.  Dr. Halote gave Cheatham a "Global Assessment of Functioning score of 60, which equates to a Whole Person Impairment (WPI) rating of 15 percent."  AR 361.  The Appeals Council found that the additional evidence "either duplicates or provides information that is consistent with the medical findings and opinion already of record in your case and, therefore, provides no basis for changing the Administrative Law Judge's decision."  AR 4-5.  Cheatham does not argue error based on a failure to consider Dr. Halote's report.  JS 6, 11.

[2] Similarly, Dr. Halote stated the issue of Cheatham's "physical injuries and resultant disabilities" are matters "outside of these evaluators' area of expertise and, thus, will be deferred to the appropriate treating specialists."  AR 349-50.

diagnosis of fibromyalgia."[3]  AR 15-16, 112.  Dr. Kent found no worsening of her condition other than complaints about tenderness in the cervical, shoulder girdle and lumbar regions, which he attributed to "disuse, reflecting her absence from the workplace for approximately four months at this time."  AR 113.  Dr. Kent reaffirmed the conclusions in his March 20, 2002 report, which precluded her from heavy work and reflected a 25% diminution in her pre-injury capacity for lifting, pushing, pulling, forceful gripping and fine manipulative activities.  AR 113, 146.  Dr. Kent noted that Cheatham had "chronic pain characterized by subjective complaints and the virtual absence of objective findings."  AR 145.  Dr. Kent opined that Cheatham required at most conservative treatment consisting of physical therapy and analgesic, anti-inflammatory and muscle relaxant medications upon exacerbation of her complaints.  AR 113, 146.

An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Certainly, an opinion of a treating physician[4] is given more weight than the opinion of non-treating physicians.  *Id.*  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

---

[3]  Dr. Kent also found no objective evidence of reflex sympathetic dystrophy ("RSD").  Cheatham did not have cyanosis, erythema, atrophy, edema, asymmetric temperature or perspiration, intolerance to touch, or altered texture of the skin, hair or nails, without which RSD is "not a viable diagnosis."  AR 112, 145.

[4]  This Court assumes Dr. Hirsch was a treating physician for purposes of analysis.

Although the ALJ did not expressly state that he rejected Dr. Hirsch's opinion, it is abundantly clear from the ALJ's decision that he rejected Dr. Hirsch's diagnosis of fibromyalgia. AR 13, 15-16. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1981) ("It is true that the ALJ did not recite the magic words, 'I reject Dr. Fox's opinion about the onset date because . . . .' But our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the paragraph discussing Dr. Pont's findings and opinion, and draw inferences relevant to Dr. Fox's findings and opinion, if those inferences are there to be drawn."). Dr. Kent's opinion, which was based on independent clinical findings over a ten-year period, constitutes substantial evidence supporting the ALJ's decision under *Orn*.

**E.     Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Cheatham's "medically determinable impairment could reasonably be expected to produce the alleged symptoms." AR 14.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical

impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (citing Social Security Ruling 88-13,[5] quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ determined that Cheatham's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." AR 14. The ALJ relied on three reasons: (1) inconsistencies in Cheatham's statements; (2) lack of objective medical evidence; (3) and inconsistencies with her sister's statements. AR 14-16.

Cheatham testified that she did no housework or cooking, but did do her own laundry. AR 381-82. The furthest she has driven is from Los Angeles to San Diego. AR 383. Her main pain is in her upper body. AR 384. She has shooting pains like hot pins going through her hand daily, 100% of the time. *Id.* She can drive about 20-30

---

[5] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

minutes before she gets uncomfortable. AR 385. When the ALJ pointed out the inconsistency with her testimony that she drives to San Diego, she testified she stops every 20 or 30 minutes. AR 386. She dressed "professionally" for her testimony, but testified that she has difficulty getting dressed. AR 387. Her hair was braided at the hearing, but explained that she had her hair done a few days ago. Usually her hair is in a ponytail and it hurts to brush her hair. AR 387-88. She can stand for only five minutes, but can walk a mile and enjoys walking. AR 388-89. She uses her computer a couple of times a week to check email and surf the web, but she won't spend more than 10 minutes using the keyboard. AR 389-90. She has had a headache for a month. AR 390. Injections provide relief for a week or so. AR 392.

In addition to the internal inconsistencies in her testimony, ALJ summarized Dr. Soltz's report of Cheatham's inconsistent statements. AR 16. Dr. Soltz opined that her statement that she makes the long commute to Los Angeles and engage in activities with her nieces and nephews on a regular basis, but does not have the energy to go to work "seems a contradiction." AR 179; AR 162. Dr. Soltz also noted Cheatham's statements that she gets up early, socializes with her girlfriends at lunch, goes to church intermittently and goes to weekly Bible study. AR 162, 179. Cheatham visits her mother, who has severe multiple sclerosis, two or three times a week. AR 162. She enjoys walking and driving, and it makes her feel better. *Id.* She owns three homes and rents out two of them. AR 159, 162-63. Dr. Soltz also viewed a "subrosa" film of Cheatham suggesting that her physical condition "is a lot less impaired than she acknowledged." AR 179; AR 116 (Dr. Kent's description of film).

The ALJ also relied on inconsistency with the objective medical evidence. Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As discussed above, the ALJ relied on Dr. Kent's neurological examination, which concluded that Cheatham did not have fibromyalgia or RSD. The ALJ agreed with Dr.

Kent's opinion that Cheatham required only conservative treatment consisting of physical therapy and medications, and that more invasive treatment was not warranted by objective findings. AR 16. The ALJ also relied on Dr. Soltz (AR 16), who noted that Cheatham's "subjective appearance seemed out of synchrony with her complaints." AR 176. Cheatham stated that she believed her gait had changed, that she feels off balance and lightheaded. However, Dr. Soltz did not observe any signs of gait impairment.[6] AR 160. Cheatham stated she gets lost during a conversation or loses her train of thought, but Dr. Soltz did not observe any such problem during his interview, which she described as lasting 2 1/2 hours. AR 161, 355. Dr. Soltz did not observe any evidence that Cheatham was in severe or significant pain during the interview. AR 179. There is intense disagreement among the examining psychologists as to the meaning of Cheatham's psychological testing. As Dr. Halote observed, "[i]t is possible to have the similar information and yet reach different clinical impressions." AR 264. It is the ALJ's province to resolve conflicts in the medical evidence. *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002).

The ALJ fairly summarized the statements of Cheatham's sister. AR 14-15. The sister stated Cheatham goes out five days a week unless she is in severe pain. AR 83. Cheatham shops at stores, by computer and by mail. *Id.* She does grocery shopping weekly for about an hour, and shops for clothes and shoes as needed. *Id.* She has help doing housework and yard work. AR 82. She goes to church and visits family one to three times per week. AR 84. Cheatham has a normal attention span. AR 85. She finishes what she starts, follows instructions well and gets along fairly with authority figures. AR 85-86. On the other hand, if her pain is extreme and uncontrolled by medication, she stays in bed for most of the day. AR 80. Her ability to handle stress is fair to poor, and Cheatham is "very sensitive to change that was not agreed upon with her." AR 86.

---

[6] Dr. Kent noted that Cheatham's gait "is intact to casual, toe, heel and tandem gait maneuvers." AR 111. The Romberg test was negative. *Id.*

The ALJ's credibility finding is supported by substantial evidence. The ALJ is entitled to rely on "ordinary techniques of credibility evaluation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Read as a whole, Cheatham has made inconsistent statements of her activities, and statements of her activities that were inconsistent with subjective complaints of debilitating pain on a daily basis. The ALJ could also reasonably infer that Cheatham's pain is not as severe or as constant as she claims from Cheatham's sister's statement, for example, that Cheatham goes out five days a week unless the pain is severe. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

## IV.

## **CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 9, 2010

ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE